UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAY A. GEORGE dba        : **CIVIL NO: 1:08-CV-02113**
GCS GEORGE COURIER SERVICE,  :
                        :(Magistrate Judge Smyser)
                        :
        Plaintiff       :
                        :
     v.               :
                        :
                        :
BOISE CASCADE CORP./OFFICE MAX, :
                        :
        Defendant      :

## **MEMORANDUM AND ORDER**

**Background**.

       The plaintiff, proceeding *pro se*, commenced this action
by filing a complaint on November 21, 2008. The plaintiff also
filed a request to proceed *in forma pauperis.*


       On January 7, 2009, the case was referred to the
undersigned magistrate judge for pretrial management.


       The plaintiff was granted leave to proceed *in forma
pauperis.* Order of February 11, 2009. (Doc. 9).

By Order of January 9, 2009, (Doc. 6) on the basis of our conclusion that the initial complaint did not state a claim upon which relief could be granted, the plaintiff was directed to file an amended complaint. We stated as follows:

> In his complaint the plaintiff asserts that he is bringing a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. However, the plaintiff has not alleged facts supporting a RICO claim.
>
> The plaintiff alleges that the defendant breached a contract with the Commonwealth of Pennsylvania pursuant to which the plaintiff was to be the Disadvantaged Business Enterprise, that pursuant to the contract the plaintiff was to receive 45% "of the contract," that the contract lasted three years, that the defendant received $40 million as a result of the contract, but that the defendant paid the plaintiff only $900,000.
>
> Mere breach of contract does not amount to a RICO violation. Accordingly, the complaint fails to state a RICO claim upon which relief can be granted. We will, however, grant the plaintiff leave to file an amended complaint to attempt, if appropriate, to properly plead his claim.

*Doc. 6* at 2-3 (footnotes omitted).

On January 13, 2009, the plaintiff filed a document which he intended to be an amended complaint. We did not consider it to be an amended complaint, and a recommendation (Doc. 10) was made to Chief Judge Kane to dismiss the case on the basis that a complaint stating a claim upon which relief could be granted had not been brought.

2

Chief Judge Kane did not accept the recommendation. By Memorandum Order (Doc. 15) of October 14, 2009, upon a determination that the initial complaint does state a breach of contract claim and a basis for jurisdiction under 28 U.S.C. § 1332 sufficient to warrant requiring the defendant to respond, Chief Judge Kane directed service of the complaint and remanded the case to the undersigned magistrate judge.

A case management order (Doc. 18) was entered on December 1, 2009. An answer (Doc. 19) was filed by defendant Boise Cascade Corp./OfficeMax (OfficeMax) on December 15, 2009. On December 23, 2009 the parties consented to proceed to final judgment with a magistrate judge conducting all proceedings. (Doc. 20). The case was then assigned to this magistrate judge pursuant to 28 U.S.C. § 636(c). An amended case management order (Doc. 25) was entered.

The defendant filed a motion for summary judgment (Doc. 30) on July 30, 2010. A brief in support (Doc. 31) and a LR 56.1 statement (Doc. 32) were filed. On August 27, 2010, the plaintiff was ordered to file a brief in opposition, a response

to the defendant's LR 56.1 statement of facts and summary judgment evidence. Order of August 27, 2010. (Doc. 35). The plaintiff on September 10, 2010 filed an answer (Doc. 36) to the LR 56.1 statement, but filed no brief. The plaintiff filed a pretrial memorandum (Doc. 37) on September 23, 2010.

By Order of October 1, 2010 (Doc. 39) the plaintiff was again ordered to file a brief in opposition. He was directed in particular to "concisely set forth the contractual provision or provisions that he is claiming the defendants breached and a statement of how the defendants breached that provision or provisions." The plaintiff did not file a brief in opposition. He did file a pretrial memorandum on September 23, 2010. (Doc. 37). *See, also,* Plaintiff Ray A. George d/b/a GCS Brief in Opposition to the Defendant's Motion for Summary Judgment to Suspend the Case Management Deadlines. (Doc. 40).

We will grant the motion of the defendant for summary judgment for the following reasons.

**<u>Summary Judgment Standard</u>**.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving

party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgment "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).


**<u>Law Relating to Plaintiff's Claim of Breach of Contract</u>**.

The plaintiff claims a breach of contract.  We consider Pennsylvania law to be applicable.


Under Pennsylvania law, the court must examine the contract to determine the intent of the parties as they have objectively manifested it. *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994).  Pennsylvania courts apply the "plain meaning rule" of contract interpretation which assumes that the intent of the contracting parties is embodied in the contract itself, and when the words of the contract are clear and unambiguous the intent is to be discovered only from the language in the contract. *Id*.; *Samuel Rappaport Family Partnership v. Meridian Bank*, 657 A.2d 17, 21 (Pa. Super. Ct. 1995)(the intent of the parties to a written contract is contained in the writing itself).  This case involves not so much issues of contract interpretation as

issues of what contract(s) give rise to contractual rights of the plaintiff and what contract(s) do not.

## The Plaintiff's Claim

The statement of the plaintiff's claim is:

The Department of General Services issued a Request For Proposal (RFP #2003-0S-01) for office supplies. In order to be considered for the contract the contractor's proposal had to include a Disadvantaged Business Enterprise (DBE). In responding to this RFP, Boise/OfficeMax secured GCS as their DBE.

We are claiming breach of [sic] under the state strategic sourcing contract for office supplies (contract #750-12) in that Boise/OfficeMax secured a state government contract solely with Disadvantaged Business Enterprise (DBE) participation. That participation came in the form of my company, GCS-George Courier Service (GCS).

The DBE was to receive 45% of the contract for the three year term. The contract lasted for three years. Boise/OfficeMax secured $40 million as a result of the contract. Boise/OfficeMax paid GCS only $900,000.00 as a result of their DBE participation.

*Doc. 1* at 4.

By Order of October 14, 2009 (Doc. 15), the plaintiff's complaint was construed by the court to state a claim of breach

9

of contract adequately to warrant service of process and an

answer.

The court stated:

OfficeMax is a national office supply
corporation, and GCS was a Harrisburg-based
trucking distribution company that employed
approximately fourteen people.[1] [footnote 1:
GCS is no longer in business. Allegedly, the
closing was due at least in part to OfficeMax's
actions in breaching its contract with GCS.]
(Doc. No. 1-3 at 3.) In April 2004, the
Pennsylvania Department of General Services
awarded a large office supply contract
("Commonwealth Contract") to OfficeMax,
provided that OfficeMax select a Pennsylvania
Disadvantaged Business Enterprise ("DBE") to
support the Commonwealth Contract.[2] [footnote
2: Governor Rendell initiated a program aiming
to ensure that businesses owned by women or
minorities receive at least ten percent of the
state's contracts for goods and services. (Doc.
No. 14 at 24.)] GCS, owned by Plaintiff Ray
George, was selected as the DBE. (Doc. No. 1 at
4.) Pursuant to a three-year contract between
GCS and OfficeMax ("Subcontract"), GCS was to
receive between 37.5 to 45 percent of the
revenue OfficeMax received from the
Commonwealth Contract. (Doc. No. 8 at 2.) GCS
alleges that OfficeMax breached the Subcontract
by paying it only $954,936 despite the 38.5
million dollar income it received from the
Commonwealth Contract. (*Id.* at 2.) On April 22,
2005, GCS advised Office Max that it considered
Office Max to be in breach of the Subcontract
since GCS had received closer to three percent
of the Commonwealth Contract revenue than the
promised 45 percent. (Doc. No. 1-3 at 7.) Yet,
OfficeMax's alleged noncompliance continued.
As a result of OfficeMax's noncompliance with
the Commonwealth Contract, GCS terminated the
Subcontract, effective January 1, 2007. (Doc.
No. 1-3 at 11.)

**Undisputed Facts**.

The following facts, as set forth in the parties' LR 56.1 statements and supporting documentation, are not in dispute:

On January 6, 2004, the Commonwealth of Pennsylvania issued a Request for Proposal numbered 2003-OS-01. Responses were due from bidders on or before February 5, 2004 at 11:00 a.m. The purpose of the Request for Proposal was to seek proposals from suppliers capable of providing office supplies to Commonwealth locations throughout Pennsylvania. The Request for Proposal was a strategic sourcing initiative to coordinate and aggregate spending policies for office supplies across all Commonwealth agencies.

On January 22, 2004, Joseph Gorman, at that time Vice President and General Manager of OfficeMax, and Maureen Els, at that time District Sales Manager for OfficeMax, met plaintiff Ray George at the bidders' conference for the Commonwealth office supplies Request for Proposal. As a result of this meeting and subsequent negotiations, OfficeMax agreed to subcontract to Ray George's company, George Courier Service, with George Courier Service being the disadvantaged business

entity subcontractor.  A disadvantaged business entity was
required by the Commonwealth to be integrated into the bid
pursuant to the terms and conditions of the Request for
Proposal.  The percentage of participation in the contract by
the disadvantaged business entity was not specified in the
Request for Proposal.  There was no quota of participation.
George Courier Service was reported to OfficeMax to be the only
state-certified minority owned courier service in Pennsylvania.

OfficeMax was awarded the office supplies contract with
the Commonwealth in or about April 2004 for the upcoming fiscal
year.  At the time of the contract, it was contemplated that
George Courier Service would not only be the delivery services
subcontractor but also act as the paper merchant to OfficeMax
for all sales of paper to the Commonwealth.  A contract of
OfficeMax with the Commonwealth was signed by those two
entities on June 14, 2004, with sales to begin on June 1, 2004.

George Courier Service acted as the delivery services
subcontractor on the contract thereafter.  The subcontract
between OfficeMax and George Courier Service specifically
provides at Exhibit B that George Courier Service was to
receive $3.53 per box of paper, $45.00 for a skid of paper

purchased by the Commonwealth and $2.00 per box of
Authorizations to Return to compensate it for all delivery
services provided under the subcontract.  The parties agreed to
this compensation and the subcontract was signed by George
Courier Service on August 10, 2004, even though George Courier
Service started to provide delivery services under the
subcontract in June 2004.

The parties continued to perform the office supply
services to the Commonwealth under the contract through 2004
and 2005, and George Courier Service continued to act as
delivery services subcontractor.  The plaintiff made complaints
to the Commonwealth's Department of General Services about the
requirements of his subcontract and about his compensation.

OfficeMax was willing and ready to establish George
Courier Service as a paper merchant, allowing plaintiff to sell
paper to OfficeMax for the Commonwealth as well as to any other
clients he gained.

When the Request for Proposal was advertised by the
Commonwealth, paper sales were estimated to be a large
percentage of the total contract sales.  In the Request for

Proposal, it was estimated and represented to OfficeMax that the Commonwealth would require copy paper to be roughly 42.6% of the overall yearly spending in the contract and that the annual paper sales alone would be $5,470,860. With this understanding, and based upon the estimated ordering figures provided by the Commonwealth, it was stated by the Commonwealth at a press conference held on April 16, 2004, that OfficeMax was awarded the contract and that George Courier Service would "participate" in roughly 45% of the final contract. This figure was submitted as part of the original bid by OfficeMax as referenced on the Revision dated April 6, 2004. The figure of 45% participation was estimated based upon the understanding that George Courier Service would be the only delivery services subcontractor (3.3% participation) and the paper merchant (paper being 42.6% of the overall yearly spending under the contract). It was estimated at the time of the press release in April 2004, that 45% of the contract would be sourced through George Courier Service with George Courier Service participation in the contract being 45% through supplying all paper as a paper merchant and through the delivery services subcontract which was part of the bid to the Commonwealth.

The plaintiff understood the agreement of the Commonwealth and OfficeMax to be one that would result in his earning approximately 45% of the gross receipts of the proceeds under that contract.

**Discussion**.

The defendant argues that its sole contractual obligation to the plaintiff was the obligation reflected in the agreement titled OFFICEMAX, A BOISE COMPANY TRANSPORTATION AGREEMENT WITH GCS-George Courier Service (Doc. 32, Exhibit E), and in particular the obligation stated in EXHIBIT B to that AGREEMENT, titled COMPENSATION FOR SERVICES. That document provides that the plaintiff is to be paid $3.63 per box, $45.00 per full skid (40 ctns) of paper and $2.00 per box on Authorizations to Return. That contract does not appear to be ambiguous. The plaintiff does not allege that that contract was ambiguous or that there was any breach of that contract.

The defendant acknowledges that "[a]t the time of the contract, it was contemplated that GCS would not only be the delivery services subcontractor but also act as the paper merchant to OfficeMax for all sales of paper to the Commonwealth." (Doc. 31, page 4). The plaintiff does not

15

state that he relies in his claims here upon an alleged breach of an agreement pursuant to which he acted pursuant to an agreement with the defendant in the role of a paper merchant.

The plaintiff's theory, as stated in his pretrial memorandum (Doc. 37), is that the defendant's contract with the Commonwealth gave rise to a contractual right on the part of the plaintiff. This is in essence a claim that he was accorded the status of a third party beneficiary of that agreement with a right to recover under that agreement. We do not agree.

We will assume for the purpose of the summary judgment motion that the plaintiff is asserting that he is a third party beneficiary of the contract between the defendant and the Commonwealth.

The plaintiff is not a party to the office supplies contract. But he asserts that he was intended by the parties to that contract to be a beneficiary of that contract.

In general, under Pennsylvania law "a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract

itself . . . unless, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicated that the promisee intends to give the beneficiary the benefit of the promised performance." *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992). When a contract with a governmental body is at issue, the test for whether a member of the public is a third-party beneficiary is strictly applied. *Drummond v. Univ. of Pa.,* 651 A.2d 572 (Pa.Commw.Ct. 1994), *appeal denied*, 661 A.2d 875 (Pa. 1995). "There must be some language in the contract evincing an intent that the party contracting with the government will be held liable to third parties in the event of breach." *A.D.E. Food Services Corp. v. City of Philadelphia*, No.Civ.A. 95-7485, 1997 WL 631121 at *10 (E.D.Pa. Oct. 9, 1997). *See also Drummond, supra.,* 651 A.2d at 579 (holding that plaintiffs were not intended third party beneficiaries of contract between City and University where there was nothing in the contract that indicated an intention by the parties that there would be liability to third party beneficiaries); *Townsend v. City of Pittsburgh*, 119 A.2d 227 (Pa. 1956)(stating that third party to contract may have been a donee beneficiary but third party may

not enforce contract because "nowhere in the contract are there any words evincing an intention to make [the promisor] liable under the circumstances of this case.").

The Commonwealth contract with the defendant indicates an intent on the part of those parties to benefit George Courier Service as a disadvantaged business entity. However, there is nothing in the contract that evinces an intent by either party that OfficeMax will be held liable to George Courier Service or to the other disadvantaged business entities mentioned in the event that OfficeMax were to breach its promise to the Commonwealth as to the allocations to be made to George Courier Service or to other disadvantaged business entities. Accordingly, the plaintiff is not an intended third party beneficiary under the agreement.

Since there is not a contention nor a showing of a breach of a contract between the plaintiff and the defendant and since the plaintiff is not a third party beneficiary under the Commonwealth's office supplies contract with OfficeMax, the defendant is entitled to summary judgment. An appropriate order will follow.

The plaintiff on June 11, 2010 submitted a letter (Doc. 23) requesting that the court appoint counsel to represent him in this case.  We will construe the letter as a motion.

"Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak,* 294 F.3d 492, 498 (3d Cir. 2002). Nevertheless, 28 U.S.C. § 1915(e)(1) provides that the court may request an attorney to represent an indigent litigant in a civil case.  That section gives the court broad discretion to request an attorney to represent an indigent civil litigant. *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).  However, it does not authorize the district court to require an unwilling attorney to represent an indigent litigant in a civil case. *Mallard v. U.S. District Court*, 490 U.S. 296, 310 (1989).

The United States Court of Appeals for the Third Circuit has developed a number of factors the court should consider when deciding whether to ask an attorney if he or she will accept the responsibility of representing a *pro se* plaintiff. *See Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993).  The threshold inquiry is whether the plaintiff's case has some arguable merit in fact and law. *Montgomery, supra,* 294 F.3d at

498-99. If a plaintiff overcomes this threshold hurdle, the court should consider other factors including 1) the plaintiff's ability to present his or her own case; 2) the complexity of the legal issues; 3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; 4) the degree to which the case is likely to turn on credibility determinations; 5) whether the case will require testimony from expert witnesses; and 6) whether the plaintiff can attain and afford counsel on his or her own behalf. *Parham v. Johnson,* 126 F.3d 454, 457 (3d Cir. 1997). This list is not meant to be exhaustive. *Tabron, supra,* 6 F.3d at 157. Rather, the determination of whether appointment of counsel is warranted must be made on a case-by-case basis. *Id.* at 158.

In the United States District Court for the Middle District of Pennsylvania, the need for a list of attorneys available for appointment to represent plaintiffs in potentially meritorious civil cases has been addressed in Local Rule 83.34. The Middle District Chapter of the Federal Bar Association has assembled a panel of attorneys who will consider representing indigent civil litigants at the request of the court. LR 83.34.3. The court may present a request for

a *pro bono* attorney to the *pro bono* chair of the Middle District Chapter of the Federal Bar Association. *Id.*

For the foregoing reasons, we have determined the plaintiff's claims to be without merit. Since the plaintiff's claims lack merit, and the defendant is entitled to summary judgment, we will not address the other *Tabron* factors.

We also note that the plaintiff has referred in his filings to the involvement in this matter of two very able members of the bar who had represented and counseled him as to his Disadvantaged Business Entity involvement with this contract. The plaintiff's claims, were they meritorious, would not be of such a nature as not to be of interest to potential counsel.

The court would prefer that all litigants be represented. Nevertheless, given the large number of cases brought by *pro se* plaintiffs and the relative scarcity of attorneys willing to accept *pro bono* appointments in these cases, we must exercise our discretion to appoint counsel discerningly.

We conclude that the circumstances presented in the instant case do not justify a request to the *pro bono* chair of the Middle District Chapter of the Federal Bar Association for a *pro bono* attorney. Accordingly, we will deny the plaintiff's motion for the appointment of counsel. An appropriate order will follow.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: November 1, 2010.

```
             UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


RAY A. GEORGE dba          : CIVIL NO: 1:08-CV-02113
GCS GEORGE COURIER SERVICE, :
                           :(Magistrate Judge Smyser)
                           :
          Plaintiff        :
                           :
       v.                  :
                           :
                           :
BOISE CASCADE CORP./OFFICE MAX, :
                           :
          Defendant        :
```

### ORDER


     For the reasons set forth in the foregoing Memorandum,
**IT IS ORDERED** that:

     1.  Plaintiff's motion (Doc. 23) for the appointment of
counsel is **DENIED.**

     2.  The defendant's motion (Doc. 30) for summary
judgment is **GRANTED.**

     3.  The Clerk of Court is directed to enter judgment in
favor of the defendant and against the plaintiff and to mark
this action **CLOSED.**

4.  The pretrial conference scheduled for December 16, 2010 is **CANCELLED**.


                                        **_/s/ J. Andrew Smyser_**
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  November 1, 2010.